**In re Charles RUTENBERG, Debtor.**

**Bankruptcy No. 93–01564–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 10, 1994.

684

Charles M. Tatelbaum, Clearwater, FL, for debtor.

Steven C. Dupre', St. Petersburg, FL, for Barnett Bank of Pinellas.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT ON MOTION TO AVOID LIEN

ALEXANDER L. PASKAY, Chief Judge.

THIS is a yet-to-be confirmed Chapter 11 case and the matter under consideration is a Motion to Avoid Lien filed by Charles Rutenberg (Debtor) in the above captioned case. In his Motion, the Debtor seeks to avoid a post-judgment writ of garnishment served by Barnett Bank of Pinellas County (Barnett) in order to reach the funds held by Merrill, Lynch, Pierce, Fenner & Smith, Inc., (Merrill, Lynch) in a cash management account (CMA) maintained by the Debtor with Merrill, Lynch. The Debtor seeks to avoid the garnishment lien as a judicial lien pursuant to § 522(f)(1), contending that the funds are exempt as wages pursuant to Fla.Stat. § 222.11.

The matter under consideration is a Motion for Summary Judgment filed by Barnett who contends that the funds held by Merrill Lynch are not bank accounts within the meaning of the Statute which protects funds

which are deposited in the bank account provided they could be traced to wages. Fla. Stat. § 222.11. The Debtor also filed a Motion for Summary Judgment contending that there are no genuine issues of material fact and therefore, he is entitled to judgment in his favor as a matter of law. The facts relevant to resolution of this issue, as established by the record, are indeed undisputed, and are as follows:

Prior to the commencement of this case, the Debtor maintained a cash management account with Merrill, Lynch, Pierce, Fenner & Smith, Inc. (Merrill, Lynch). On a regular basis, the Debtor deposited funds into this account. On May 7, 1992, Barnett obtained a judgment against the Debtor in the amount of $4,668,119.65 in the Circuit Court for Pinellas County, Florida. On May 22, 1992, Barnett served a post-judgment writ of garnishment on Merrill, Lynch. Subsequently, on February 12, 1993, the Debtor filed his voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code.

Based upon these facts, Barnett contends that the Merrill, Lynch account is not a "bank account," as that term is used in Florida Statute § 222.11, and therefore, the funds held within the account cannot be claimed as exempt as wages pursuant to F.S. § 222.11. In opposition, the Debtor claims that the Merrill, Lynch account clearly falls within the definition of "bank account" and satisfies the provisions of § 222.11.

Florida Statute § 222.11 provides, in pertinent part, as follows:

No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, when such money or other thing is due for the personal labor or services of such person ... This exemption shall apply to any wages deposited in any bank account maintained by the debtor when said funds can be traced and properly identified as wages. (1991)

The term "bank account" is not defined within Chapter 222, however, the term is defined by various other statutes. In order to estab-

lish a proper definition of "bank," it is appropriate to consider definitions of "bank" found in Florida and federal statutes. Florida Statute § 658.12 provides a definition for "bank," which is as follows:

(2) "Bank" means any person having a subsisting charter or other lawful authorization, under the laws of this or any other jurisdiction, authorizing such person to conduct a general commercial banking business. The term "bank" does not include a credit union or an association.

\* \* \* \* \* \*

(9) "General commercial banking business" includes:

(a) the business of receiving demand and time deposits;

(b) the payment of checks; and

(c) the conduct of a trust business when duly authorized.

The Bank Holding Company Act of 1956, 12 U.S.C. 1841(c) defines "bank" as:

any institution organized under the laws of the United States, any State of the United States, the District of Columbia, any territory of the United States ... except an institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation or an institution chartered by the Federal Home Loan Bank Board, which (1) accepts deposits that the depositor has a legal right to withdraw on demand, and (2) engages in the business of making commercial loans ...

Considering these factors together with the Prospectus (Exh. 5 to Motions for Summary Judgment) prepared by Merrill Lynch, the following conclusions can be drawn. Merrill, Lynch is licensed under the Securities and Exchange Act of 1934 and is not chartered by a State or by the Federal Government. In fact, Merrill, Lynch itself describes itself as a "broker-dealer," and specifically disclaims to be a bank.

Although currency is deposited in the Merrill, Lynch account, these funds are used to purchase shares in a money-market fund, which invests in no-load market funds and in no-load short-term municipal bonds. The statements of the account generated by Merrill, Lynch reflect the balance in terms of quantity of *shares* owned by the Debtor, and not the amount deposited by the Debtor. It is clear that the relationship between the Debtor and Merrill, Lynch is not a debtor-creditor relationship generally associated with a banking institution. Instead, the relationship is one of broker and investor.

Moreover, Merrill, Lynch does not guarantee the net asset value of the investments made. Although Merrill, Lynch attempts to maintain a net asset value of $1.00, the Prospectus clearly discloses that the net asset value of the depositor's interest could diminish. In other words, if the investment has a downturn, the amount of the deposit can decrease proportionately. A similar situation does not occur in a conventional banking relationship. When a depositor deposits funds in his bank account, the least he will receive upon withdrawal of those funds is the exact amount he put in, and the principal amount deposited is not subject to market fluctuations.

In addition, the Merrill, Lynch account is not insured by FDIC, nor guaranteed by the U.S. Government. Merrill, Lynch does offer an optional feature on their accounts, which allows the funds to be insured through FDIC. However, the Debtor did not select this feature as a part of his account. In order to have the funds insured by FDIC, Merrill, Lynch deposits those funds in a separate bank account maintained by Merrill, Lynch. The funds deposited in the Debtor's account were not subsequently deposited in a Merrill, Lynch bank account and therefore, were not insured by FDIC.

According to the Prospectus, withdrawal of funds, or "redemption of shares" may be done with written notice. If written notice is received before 12 noon, then redemption will be effective on that day, and payment will be made on that day. If written notice is received after 12 noon, redemption and payment will occur the following day. The requirement of notice of withdrawal characterizes these withdrawals as "time deposits" and not demand deposits. *Oklahoma Bankers Association v. Federal Reserve Board,* 766 F.2d 1446 (10th Cir.1985).

While it is true that through the CMA account, the Debtor has access to funds in a

manner similar to banking activity, this by itself does not compel the conclusion that Merrill, Lynch is a bank or is understood to be involved in the banking industry. In the final analysis, it is clear that Merrill, Lynch is not chartered or regulated by any state or federal government, does not engage in commercial lending, and pays interest based upon the performance of securities. These features are completely unlike a banking institution. Based upon the foregoing, this Court is satisfied that the Statute was intended to protect wages even after they were deposited. It was not designed to protect funds which were used to purchase securities from a broker.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by Barnett Bank is hereby granted. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Debtor is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED that the Motion to Avoid Lien of Barnett Bank filed by the Debtor is hereby denied.

DONE AND ORDERED.